# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO    CR23-104 TLT

UNITED STATES OF AMERICA,

V.

WEIBAO WANG,

**FILED**

April 11, 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

DEFENDANT(S).

## INDICTMENT

18 U.S.C. § 1832(a)(1), (2), (3) & (4) – Theft and Attempted Theft of Trade Secrets;
18 U.S.C. §§ 1834 and 2323 – Forfeiture Allegation

A true bill.

_____/s/ Foreperson of the Grand Jury_____
                                      Foreman

Filed in open court this ___11th___ day of

___April, 2023___

                              Rose Maher, Clerk
                                      Clerk

Bail, $<u>no bail arrest warrant</u>

Hon. Thomas S. Hixson, U.S. Magistrate Judge

ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

FILED

April 11, 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>WEIBAO WANG,<br><br>    Defendant. | CASE NO. CR23-104 TLT<br><br>VIOLATIONS:<br>18 U.S.C. § 1832(a)(1), (2), (3) & (4) – Theft and Attempted Theft of Trade Secrets;<br>18 U.S.C. §§ 1834 and 2323 – Criminal Forfeiture.<br><br>SAN FRANCISCO VENUE |

### I N D I C T M E N T

The Grand Jury charges:

<u>Introductory Allegations</u>

At all times relevant to this Indictment:

1. Apple, Inc. ("Apple") is a technology company headquartered in Cupertino, California.

2. By 2018, Apple was involved in the research and development of technology related to autonomous systems (the "Project"), which can have a variety of applications, such as self-driving cars. Apple employees working on the Project designed and developed both the hardware and software necessary for motion planning for such autonomous systems, and over the span of many years the company invested substantial resources into development of the Project.

3. Apple owned all of the Project's intellectual property, including but not limited to the

INDICTMENT

trade secrets at issue, as alleged below.

4. Apple placed limits on the number of employees with knowledge about the Project. Specifically, Apple granted employees "disclosure" for the Project. Disclosure status allowed an employee to receive information for the Project and was solely granted on a strict "need to know" basis. Around April 2018, only around 5,000 of Apple's over 135,000 full time employees were disclosed on the Project.

5. Apple maintained multiple confidential databases which contained proprietary and confidential information about the Project (the "Databases"). Not all employees disclosed on the Project had access to the Databases. Around April 2018, approximately 2,700 Apple employees had access to one or more of the Databases.

6. Apple also communicated the importance of secrecy to its employees. Before starting at Apple, corporate employees were required to sign a Confidentiality and Intellectual Property Agreement ("IPA"). The IPA specified that an employee must not use Apple's intellectual property except as authorized by Apple, and it included a prohibition against transfer and transmission of intellectual property without Apple's consent.

7. Employees disclosed on the Project were also required to attend in-person secrecy training for the Project ("Secrecy Training"). Secrecy Training covered the importance of keeping the nature and the details of the Project secret and avoiding intentional and unintentional information leaks. Secrecy Training taught methods for ensuring that information about the Project was only provided to individuals disclosed on the Project. The training covered possible consequences for providing information or confirmation of information to non-disclosed individuals, including employment termination. In addition, Secrecy Training covered Apple's policy prohibiting employees from storing Apple's intellectual property on devices over which they do not have personal control, and the requirements for storing and transmitting Project documents using secure mechanisms.

8. On or about March 7, 2016, Weibao WANG joined Apple as a software engineer on the Project. On or about December 15, 2015, before starting at Apple, WANG signed Apple's IPA. Because of his position, WANG was granted disclosure on the Project. On March 23, 2016, WANG attended Secrecy Training for the Project. Additionally, during each year of his employment, WANG

INDICTMENT 2

took a Business Conduct course at Apple, which covered the appropriate handling of confidential material.

9. While at Apple, WANG was a member of the Annotation Team, which worked on algorithms to accelerate or enhance the process of annotating real-world objects. Due to WANG's role on the Project, he was granted broad access to the Databases, which contained trade secrets and intellectual property for the Project.

10. On or about April 3, 2018, WANG sent an email to his supervisor stating that he was resigning from Apple, and that his last day with the company would be April 16, 2018. WANG's resignation email did not indicate what he planned to do after leaving Apple. During an exit interview with his supervisor, WANG did not reveal where he was going to work after Apple.

11. Unbeknownst to Apple, on or about November 22, 2017, more than four months prior to his resignation email, WANG signed a letter accepting an offer of full-time employment as a Staff Engineer with the U.S.-based subsidiary of another company that was headquartered in the People's Republic of China and was working to develop self-driving cars ("COMPANY ONE").

12. In or around May 2018, Apple representatives reviewed access logs documenting historical activity on Apple's network. While reviewing access log activity for the Databases containing proprietary and confidential information relating to the Project, Apple identified WANG as having accessed large amounts of sensitive Project information in the days leading up to his departure from Apple.

13. On June 27, 2018, law enforcement executed a search warrant at WANG's residence in Mountain View, California. During the search, agents recovered several of WANG's personal electronic devices. WANG was present at the search and told agents that he had no plans to travel.

14. Nevertheless, later the same day, at approximately 8:34 p.m., WANG purchased a one-way plane ticket from San Francisco International Airport to Guangzhou, China. Records indicate that WANG boarded the flight, which departed San Francisco at approximately 11:55 p.m. that night.

15. Analysis of various devices seized from WANG's home revealed that he had stored large quantities of data taken from Apple prior to his departure. WANG's personal desktop computer and personal external hard drive each contained various confidential, proprietary materials from the Project.

Among the materials recovered was the entire Project source code, as it existed at the time surrounding WANG's departure from Apple.

16. Data associated with several of the computer files containing confidential, proprietary materials from the Project indicated that most of the files identified below were last accessed during the period following WANG's departure from Apple, while he was employed by the subsidiary of COMPANY ONE.

COUNTS ONE THROUGH SIX: (18 U.S.C. § 1832(a)(1), (2), (3) & (4) – Theft and Attempted Theft of Trade Secrets)

17. The allegations contained in Paragraphs 1 through 16 are realleged and incorporated as if fully set forth herein.

18. On or about the dates set forth in the separate counts below, in the Northern District of California and elsewhere, the defendant,

WEIBAO WANG,

intending to convert a trade secret that was related to a product and service used in and intended for use in interstate and foreign commerce to the economic benefit of anyone other than the owner of that trade secret, and knowing and intending that the offense would injure the owner of that trade secret, as specifically alleged in each of Counts One through Six below:

    a. knowingly stole, and without authorization appropriated, took, carried away, concealed, and by fraud, artifice, and deception obtained trade secrets belonging to Apple, and attempted to do so;

    b. knowingly and without authorization copied, duplicated, sketched, drew, downloaded, uploaded, altered, photocopied, replicated, transmitted, delivered, sent, communicated, and conveyed trade secrets belonging to Apple, and attempted to do so; and

    c. knowingly and without authorization received, bought, and possessed trade secrets belonging to Apple, and attempted to do so, knowing the same to have been stolen and appropriated, obtained, and converted without authorization:

//

INDICTMENT 4

| Count | Date | Item Description |
|---|---|---|
| One | On or about August 11, 2016 | Entire Autonomy Source Code |
| Two | On or about April 18, 2018 | Tracking for an Autonomous System |
| Three | On or about April 15, 2018 | Behavior Planner for an Autonomous System |
| Four | On or about April 14, 2018 | Architecture Design for an Autonomous System |
| Five | In or about April 2018 | Descriptions of Hardware Systems, Including Architecture, Modules, Power, and Inputs |
| Six | On or about April 15, 2018 | Motion Planner for an Autonomous System |

Each in violation of Title 18, United States Code, Sections 1832(a)(1), (2), (3) & (4).

FORFEITURE ALLEGATION: (18 U.S.C. §§ 1834 and 2323 – Proceeds and Property Involved in Theft of Trade Secrets)

19. The allegations contained in Counts One through Six of this Indictment are hereby realleged and incorporated as if fully set forth here. Upon conviction of any of those offenses, the defendant,

WEIBAO WANG,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 1834 and 2323, any property used, or intended to be used, in any manner or part to commit or facilitate the commission of the offenses, and any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of the offenses.

20. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

|   |   |   |
|---|---|---|
| 1 | c. | has been placed beyond the jurisdiction of the court; |
| 2 | d. | has been substantially diminished in value; or |
| 3 | e. | has been commingled with other property which cannot be divided without |
| 4 |   | difficulty, |

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2323(b).

All pursuant to Title 18, United States Code, Sections 1834 and 2323.

DATED: April 11, 2023                                        A TRUE BILL.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Foreperson
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　FOREPERSON
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　San Francisco, California

ISMAIL J. RAMSEY
United States Attorney


　/s/ Sloan Heffron
SLOAN HEFFRON
MARISSA HARRIS
Assistant United States Attorney

INDICTMENT                                        6